In the Matter of GULF BEACH DEVELOPMENT CORP., Debtor.

Bankruptcy No. 84–1178.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 4, 1985.

█

---

Douglas Zahm, West Palm Beach, Fla., for movant.

Richard Prosser, Tampa, Fla., for debtor.

### ORDER ON MOTION TO MODIFY STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the immediate matter under consideration is a Motion to Modify Stay filed by Union Chelsea National Bank (Bank) against Gulf Beach Development Corporation, the Debtor in the above-styled case. The Bank seeks the entry of an Order Modifying the Automatic Stay imposed by § 362 of the Bankruptcy Code, to permit the Bank to continue a foreclosure action which was commenced in October, 1982 in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida (Case No. 82–12252–18).

The mortgage sought to be foreclosed encumbers certain real property located in Indian Shores, Florida known as Indian Summer Condominiums. The project consists of two separate buildings. One building is located directly on the Gulf of Mexico and contains sixteen condominium units, while the other is located across the street, fronts on the Intercoastal Waterway and contains eight condominium units.

The Debtor is the record title holder of the subject property and on March 9, 1981, Michael Sedwick, as President of the Debtor executed a note in the principal amount of $1,500,000 secured by a mortgage in favor of the Bank for the purpose of obtaining construction financing. The mortgage provides that it shall also secure future advances whether optional or obligatory, made within 15 years from the date of the mortgage, however, the total unpaid balance shall not exceed twice the face amount of the note plus interest.

The Bank seeks relief from the stay for cause, including lack of adequate protection, pursuant to § 362(d)(1) and alleges that the buildings are unoccupied and are subject to deterioration, theft and vandalism; that the Debtor has failed to provide proof of insurance, and, that the Debtor has failed to pay the 1983 property taxes. The Bank also seeks relief pursuant to § 362(d)(2) and alleges that the Debtor has no equity in the subject property and that the property is not necessary to an effective reorganization.

It is the Debtor's position that the Bank is not entitled to the relief sought for the following reasons: (1) on September 3, 1983, the Bank released the Debtor from the debt evidenced by the note and mortgage; (2) the Bank does not own or hold a promissory note and mortgage executed by the Debtor encumbering the Indian Summer property; even if the debt survives the release, it is merely an unsecured claim; the property is insured; the Debtor has substantial equity in the property; the property is the sole asset of this Debtor and is, therefore, absolutely essential to effective reorganization. In addition, the

Debtor contends that a second mortgage in favor of Dison Corporation, N.V. and a third mortgage in favor of Leonard S. Vaillancourt, are criminally usurious and, therefore, do not encumber the property.

Based on the testimony and documentary evidence presented at the final evidentiary hearing, the Court finds and concludes as follows:

As noted earlier, on March 9, 1981, the Debtor, by its President executed the note and mortgage in favor of the Bank. The Debtor defaulted under the terms of the note and mortgage and in October, 1982, the Bank commenced a foreclosure action. On October 18, 1982, a Receiver was appointed by the state court to complete the improvements and in that regard, the Bank continued to advance construction funds. On September 3, 1983, the Debtor and the Bank entered into a Settlement Agreement and executed a Release. The Settlement agreement provides in pertinent part:

> Upon payment by Union Chelsea of the sum $150,000 (to Camelot Oaks, Gulf Beach and Sedwick) ... Gulf Beach, Camelot Oaks and Sedwick agree to withdraw all defenses, including Affirmative Defenses, and to dismiss their Counterclaim with prejudice to the right of Gulf Beach, Camelot Oaks, and Sedwick to refile the same claim or a claim arising in any way out of or connected to the respective Loans ... and the above-referenced lawsuits, including all matters relating to the receiverships of J. Warren Hughes, the court appointed Receiver in both cases. *Gulf Beach, Camelot Oaks and Sedwick hereby stipulate to the entry of a Final Judgment against them in each of the aforementioned lawsuits on the grounds asserted in the Second Amended Complaint filed in Case No. 82–12252–18 and the Amended Complaint filed in Case No. 82–13663–19.* (emphasis supplied). Gulf Beach, Camelot Oaks, and Sedwick also agree not to directly or indirectly assist any other Defendant in the above-referenced litigation in defending the mortgage foreclosure actions unless (they) are acting under direction of the Court or at the written direction of any of the other defendants ... Gulf Beach, Camelot Oaks, and Sedwick also agree to immediately cease, withdraw from and agree not to hereafter participate in, unless under court order, any legal or administrative proceedings wherever located, against Union Chelsea regarding any matter arising from or connected to (the mortgage loans).

> *As further conditions of this Settlement, the parties agree to execute mutual releases,* copies of which are attached hereto and incorporated herein by reference ... (emphasis supplied) ...

The Release states that the Bank and the Debtor:

> ... understand and agree that the claims asserted between them are in dispute and have settled such dispute to avoid further litigation.

The Release further provides that:

> ... in consideration of the mutual promises herein contained and for other good and valuable consideration ... each of the parties and all those in privity with them, release and forever discharge the other and all those in privity with them of and from any and all claims, demands, damages, actions, causes of action or suits in equity, of whatever kind or nature, and whether accruing now or in the future, or whether now known or unknown to the parties, for or because of any matter or thing done, omitted or suffered by either of such parties prior to and including the date hereof and in any way directly or indirectly arising out of or connected to the above-referenced mortgage loan transaction and the pending action in the Circuit Court, Pinellas County, Florida, being Case No. 82–12252–18, and Gulf Beach and Sedwick hereby authorize and direct their attorney of record to execute and deliver such instruments and take such other action as may be necessary to withdraw their defenses and dismiss their counterclaim with prejudice to their right to refile the same.

On September 8, 1983, the Debtor and Michael Sedwick filed an Amended Answer in the foreclosure action wherein the Debtor admitted the execution of the note and mortgage, ownership of the subject property and that the Bank owns and holds the note and mortgage. The Debtor also dismissed its counterclaim with prejudice and withdrew its affirmative defenses.

The record reveals that the foreclosure action was scheduled for trial on June 5, 1984, however, on May 29, 1984, the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. On June 28, 1984, the Bank filed the instant motion for relief from stay.

The record is clear and the Court is satisfied that during the construction of the condominium project, the Bank disbursed the principal sum of $2,322,584.66 which represents $1,051,007.75 advanced to the Debtor and $1,271,576.91 advanced to the state court receiver. The Bank also disbursed $19,994.22 for taxes. As of October 19, 1984, the accrued interest was approximately $646,826 with interest accruing at a per diem rate of $1,003.03. Thus, the outstanding indebtedness, without even considering the second and third mortgages is in excess of $2,989,404. Based on the expert testimony presented by the Bank, the Court is satisfied that market value of the property is approximately $1,885,000 despite the testimony offered by the Debtor that if the condominiums were converted to time share units, the value of the property would be significantly increased.

Under normal circumstances, there would be no doubt that the Debtor has no equity in the property and inasmuch as it represents the Debtor's sole asset, it is evident that the Debtor cannot *effectively* reorganize. However, in this case, the Debtor asserts that the Release Agreement executed by the parties on September 3, 1983 operated to extinguish the debt. Thus, although "release" constitutes an affirmative defense and affirmative defenses are not properly asserted in the context of stay litigation, the Court must address and resolve the threshold question of the existence, vel non, of a debt.

This Court is satisfied after reviewing the Settlement Agreement and Release that (1) the documents executed on September 3, 1983 represent a single integrated agreement; (2) that the terms and conditions of the settlement were set forth in both the Settlement Agreement and the Exhibits (which included the Release); (3) that as conditions of the entire agreement the Debtor agreed among other things to the entry of a final judgment in a pending foreclosure action, and to execute the Release; and that the Release was executed in recognition of the terms of the settlement and to avoid future litigation. There is no doubt in this Court's mind that the parties intended that as a condition to an absolute release, a final judgment in foreclosure would be rendered in favor of the Bank and against the Debtor. While the Debtor cannot be precluded from exercising its right to file Bankruptcy and any contractual provision to the contrary is unenforceable as a matter of law, the Debtor cannot, by filing a Petition in bankruptcy, prevent the occurrence of a contractual condition running in favor of the Bank and then reap the advantages of his action by asserting that he is released from his obligations.

Based on the foregoing, this Court is satisfied that the debt owed by this Debtor to the Bank has not been extinguished, that the Debtor has no equity in the property and that the Debtor cannot achieve a successful reorganization inasmuch as the subject property represents its sole asset. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Stay filed by Union Chelsea Bank be, and the same hereby is, granted and the stay is lifted to permit the Bank to complete the foreclosure action currently pending in the state court.