In re Thomas J. POWERS, Debtor.

Bankruptcy No. 94–10995–WCH.

United States Bankruptcy Court,
D. Massachusetts.

Aug. 12, 1994.

Michael B. Feinman, Andover, MA, for Thomas J. Powers.

Liam J. Vesely, Aloisi & Aloisi, Boston, MA, for Haymarket Co-op. Bank.

*PRELIMINARY DECISION ON MOTION FOR RELIEF FROM STAY*

WILLIAM C. HILLMAN, Bankruptcy Judge.

Haymarket Cooperative Bank ("Haymarket") seeks relief from the automatic stay so that it may foreclose on property mortgaged to it by Debtor. At the preliminary hearing it was agreed that I would first determine the efficacy of the waiver granted by Debtor to Haymarket pre-petition, as that issue may be determinative. If it should prove to be otherwise, a further hearing will be held. Haymarket has waived the 30–day deadline of 11 U.S.C. § 362(e).

## Findings of Fact

Debtor granted Haymarket a mortgage on property at 108 Dorchester Street, South Boston, Massachusetts, in 1990. He also had other indebtedness to Haymarket, secured by other properties. In 1992 the debt secured by the Dorchester Street mortgage was consolidated with the other indebtedness by means of a settlement agreement (the "Agreement") executed on or about April 29, 1992.

At the time the Agreement was executed, Debtor was the subject of a pending Chapter 11 case in this Court. *In re Powers*, No. 91–19764–CJK ("Powers I")

Paragraphs 1 and 8 of the Agreement, as relevant here, provide:

"1. *Bankruptcy Court Approval.* This Agreement shall not become effective unless and until either (a) the Bankruptcy Case is dismissed without prejudice by order of the Bankruptcy Court or (b) this Agreement is approved by order of the Bankruptcy Court (any such order, under either clause (a) or clause (b) above, is hereinafter referred to as the 'Approval'. . . ."

"8. *Relief from Automatic Stay.* The issuance of the Approval shall constitute relief to Haymarket from the automatic stay pursuant to Section 362 ... without the requirement of any further relief from the Bankruptcy Court, for all actions by Haymarket in carrying out the provisions of this Settlement Agreement or otherwise exercising its rights as mortgagee. . . ."

On May 14, 1992 Debtor moved to dismiss Powers I. Docket No. 23. There was no opposition to the motion and dismissal was allowed by an order entered June 18, 1992. Docket No. 25.

Debtor subsequently defaulted in his undertakings under the Agreement. Haymarket began foreclosure proceedings in accordance with the terms of the Agreement, which specified the order in which the various properties would be sold. One parcel was sold and thereafter Debtor brought the current proceeding. Haymarket moved for relief from the automatic stay. Debtor objects.

## Discussion

■ As an initial matter, Debtor contends that the relief from stay provision of the Agreement applied only in Powers I and not in the present case. I ruled to the contrary from the bench. One of the triggers for approval of the relief from stay provision was dismissal. The language of the Agreement must contemplate that it would be effective in any further proceedings in which the automatic stay arose.

There remains the issue of the enforceability of the waiver, which I have taken under advisement.

### The pre-petition waiver

In recent years large numbers of loans have gone into default. The result of the default is often, as in the case at bar, a "workout agreement" in which the parties restructure the transactions between them.

It has been said that "practically every loan modification or business workout agreement drafted today" contains bankruptcy waiver provisions, including the type presently before me. Jeffrey W. Warren and Wendy V.E. England, *Pre–Petition Waiver of the Automatic Stay is Not Per Se Enforceable*, Am.Bankr.Inst.J. 22 (March 1994). The cases determining the validity of such provisions are not in complete accord.

### Waiver clauses are not per se invalid

■ The waiver is contained in a document executed before the commencement of proceedings under the Bankruptcy Code. The initial concern is whether it is a provision which is per se unenforceable in bankruptcy. Certain other common contractual and statutory clauses have been so held. *See, e.g., Summit Investment & Development Corp. v. LeRoux (In re Leroux)*, 167 B.R. 318, 322 (Bankr.D.Mass.1993) (provision in limited partnership agreement depriving general partner of his office upon filing of a petition is an invalid ipso facto clause). The Second Circuit Court of Appeals has stated that "the debtor may not waive the automatic stay", *Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir.1986), but that

case did not involve the issue before me and I believe that the case is inapplicable in the present context. The courts which have directly considered the issue with regard to pre-petition waivers have uniformly assumed that the clause remains valid.

In *In re Cheeks*, 167 B.R. 817 (Bankr. D.S.C.1994), Judge Bishop explained the reason that such clauses are generally enforceable against a debtor:

"Perhaps the most compelling reason for enforcement of the forbearance agreement is to further the public policy in favor of encouraging out of court restructuring and settlements. Bankruptcy courts may be an appropriate forum for resolving many of society's problems, but some disputes are best decided through other means. In the instant case the Debtor received relief under the forbearance agreement approximating that which would have been available in a bankruptcy proceeding. The Pending foreclosure sale was canceled, the foreclosure action was dismissed, and the Debtor gained an opportunity to start a new payment schedule.... To allow her now to receive the full benefits resulting from reimposition of the automatic stay as to RTC would be inconsistent with the Court's oft-stated skepticism regarding serial bankruptcy filings."

167 B.R. at 818 (citations omitted). *See also In re Club Tower L.P.*, 138 B.R. 307, 311 (Bankr.N.D.Ga.1991), and cases cited.

I agree that pre-petition agreements waiving opposition to relief from the automatic stay may be enforceable in appropriate cases.

### The waiver is not self-executing

■ Haymarket did not take literally the language of the Agreement that its approval "shall constitute relief ... from the automatic stay pursuant to Section 362" but instead sought to obtain that relief from the Court. It is well that it did so, for I agree with Judge Markovitz that "the contention that this 'waiver' is enforceable and self-executing is without merit." *In re Sky Group International, Inc.*, 108 B.R. 86, 88 (Bankr.W.D.Pa. 1989). A motion for relief under § 362 is required for enforcement.

### Validity against the third parties

■ A waiver by the debtor cannot bind third parties. As Judge Bishop held in *Cheeks, supra*:

"Enforcement of a forbearance agreement does not in itself mean that in all bankruptcy cases where one exists, the automatic stay will be lifted. These agreements do not oust this Court's Jurisdiction to hear objections to stay relief filed by other parties in interest. It simply means that this Court will give no weight to a Debtor's objection as this conflicts with and is in derogation of the previous agreement."

"... [W]hen creditors and parties in interest entitled to notice on a motion to lift the stay do not object, the stay becomes lifted as though the motion is in default as the 'objection' of the debtor is meaningless and of no effect because of the forbearance agreement."

*Id.* at 819–820.

### Effect of waiver on debtor's conduct

■ Some courts have held that the debtor is not barred from contesting the relief from stay notwithstanding the pre-petition waiver. *Farm Credit v. Polk*, 160 B.R. 870 (M.D.Fla.1993), affirms a dual finding of the bankruptcy judge that (1) such agreements are not self-executing and (2) not sufficient grounds to lift the automatic stay in the absence of bad faith. *Id.* at 873. Since relief from stay for cause, or dismissal of the proceeding, would normally follow a finding that the filing of the original petition was in bad faith, under this view the "drop dead" agreement has no real value in and of itself.

In *Farm Credit*, Judge Kovachevich distinguished a number of Florida bankruptcy court decisions involving single asset debtors (which the debtor before him was not): *In re International Supply Corp.*, 72 B.R. 510 (Bankr.M.D.Fla.1987); *In re Gulf Beach Development Corp.*, 48 B.R. 40 (Bankr.M.D.Fla. 1985); *In re Citadel Properties*, 86 B.R. 275 (Bankr.M.D.Fla.1988); *In re McBride Estates, Ltd.*, 154 B.R. 339 (Bankr.N.D.Fla. 1993); *B.O.S.S. Partners I v. Tucker (In re B.O.S.S. Partners I)*, 37 B.R. 348 (Bankr.

M.D.Fla.1984). He held that, in each of those decisions, "the Bankruptcy Court, expressly or impliedly, determined that the debtor could not effectively reorganize." *Id.* at 872. If that were true, then the waiver clause has no effectiveness even in the single asset cases. My reading is otherwise.

Judge Paskay's holding in *Gulf Beach Development* is that, although the debtor "cannot be precluded from exercising its right to file Bankruptcy," 48 B.R. at 43, waivers of the right to object to relief from stay will be enforced. Judge Proctor agreed with both points in *Citadel Properties, supra,* as did Judge Robinson in *In re Club Tower L.P., supra.* Judge Paskay has, however, stated that he might decline to enforce the waiver in special circumstances, as he indicated in *B.O.S.S. Partners, supra:*

> "[T]his Court is in agreement with the principle that a stipulation freely entered into by the parties is binding on the parties. In the context of a stay litigation, such a stipulation operates as a waiver by the debtor of any right to obtain protection from the Court against proceedings instituted by a secured party for the purposes of enforcing its security interest. This proposition, however, is not etched in cement and should not be applied in an inflexible and pragmatic manner and under proper circumstances, the Court may use its equitable powers under § 105 of the Code. For instance, if there is a radical and new development which drastically changes the economic picture and the value of the collateral ... it is clear that this Court may grant additional relief to the debtor by way of injunctive relief."

37 B.R. at 351.

In the Northern District of Florida, it has been held that the actions of a debtor in opposing a motion for relief from stay where it has executed a pre-petition waiver are sanctionable. *In re McBride Estates,* 154 B.R. 339 (Bankr.N.D.Fla.1993).

*International Supply* is simply inapposite to the issue now before the court.

My view is that the waiver is a primary element to be considered in determining if cause exists for relief from the automatic stay under § 362(d)(1). However, the existence of the waiver does not preclude third parties, or the debtor, from contesting the motion. I disagree with *McBride, supra.*

Once the pre-petition waiver has been established, the burden is upon the opposing parties to demonstrate that it should not be enforced. In addition to the extraordinary matters which Judge Paskay listed in *B.O.S.S. Partners, supra,* the Court will consider other factors, such as the benefit which the debtor received from the workout agreement as a whole; the extent to which the creditor waived rights or would be otherwise prejudiced if the waiver is not enforced; the effect of enforcement on other creditors; and, of course, whether there appears to be a likelihood of a successful reorganization. While the last is generally considered an element of proof under § 362(d)(2)(B), an analysis in accordance with the discussion in *In re Building 62 Ltd. Partnership,* 132 B.R. 219, 222 (Bankr. D.Mass.1991) is certainly relevant in the present context.

### Conclusion

In view of the above discussion, it will be necessary for an evidentiary hearing to be held on Haymarket's motion. It will be noticed by the Clerk.